1              UNITED STATES DISTRICT COURT

2             SOUTHERN DISTRICT OF MARYLAND

3

UNITED STATES OF AMERICA

4

       vs.                          CASE NO. 14-CR-00529-TDC

5

VADIM MIKERIN

6

            Defendant.

7  _____)

8

                    TRANSCRIPT OF PROCEEDINGS

9         BEFORE THE HONORABLE THEODORE D. CHUANG
           FRIDAY, JANUARY 30, 2015; 10:05 A.M.

10                  GREENBELT, MARYLAND

11

FOR THE GOVERNMENT:

12       OFFICE OF THE UNITED STATES ATTORNEY
         Adam K. Ake, Esquire

13       James a. Crowell, IV, Esquire
         6500 Cherrywood Lane, Suite 400

14       Greenbelt, MD  20770

15 FOR THE DEFENDANT:
         ORRICK, HERRINGTON AND SUTCLIFFE, LLP

16       Jonathan Lopez, Esquire
         William Jacobson, Esquire

17       1152 15th Street, NW
         Washington, DC 20005

18

19

    Proceedings recorded by mechanical stenography, transcript

20 produced by computer.

21 _____

22

                    CINDY S. DAVIS, RPR

23            FEDERAL OFFICIAL COURT REPORTER
            6500 CHERRYWOOD LANE, SUITE 200

24                GREENBELT, MD  20770

25

                    P R O C E E D I N G S

          THE DEPUTY CLERK:  The matter now pending before this

Court is criminal action number TDC-14-CR-0529, the United

States of America versus Vadim Mikerin.  We are here for the

purpose of a telephone status hearing.  Counsel, please

identify yourselves for the record.

          MR. AKE:  Good morning, Your Honor.  For the

Government, this is Adam Ake for the United States.  I'm joined

by Jim Crowell, also from the U.S. Attorney's Office, as well

as Ephram Wernick from the Department of Justice, Fraud

Section.

          MR. LOPEZ:  Jonathan Lopez, on behalf of Vadim

Mikerin, along with Billy Jacobson.

          THE COURT:  Thank you very much.  We're here for a

status conference.  Before I begin, I just want to let you know

we are coming to you from the courtroom, and we also are joined

today by a member of the public, who is actually from the

Embassy of the Russian Federation.  Mr. Sidorov is here

observing at his request.  So I want to let everyone know that

he is here as a member of the public.

          The last time we spoke, there was a request for more time

to address some discovery issues, discovery issues in terms of

providing materials already here, and then also some efforts

being made to gain materials from other countries.

          Mr. Ake, can you tell us where we currently stand now?

1          MR. AKE:  Yes, Your Honor.  So we did provide

2     additional discovery on the charge that's included in the

3     indictment and got that over last Friday, the 19th.

4          Then counsel wrote us a letter asking for some

5     clarifications and some additional items.  We had our own

6     conference on that on Wednesday afternoon, and we've been

7     addressing some of those issues and cobbling together some

8     other materials.

9          Also, we're arranging for a physical evidence review for

10    defense counsel at FBI's Washington field office, where

11    physical evidence was seized during warrants that were executed

12    in conjunction with Mr. Mikerin's arrest, as well as some

13    arrests that were made on complaints of others, is stored.

14         It's the Government's position right now that we have

15    satisfied our discovery obligations on Rule 16 materials that

16    will be used by the Government during trial of the count that's

17    charged in the indictment.

18         Defense counsel has requested some additional items.

19    We're kind of looking at those case by case.  They are asking

20    for some early Jencks information, as well as some Giglio

21    information.  We agreed in our discovery agreement that we'll

22    provide that a month before trial.  We'll kind of look at it on

23    a case-by-case basis, but our position is that we are complying

24    with our obligations under our agreement, as well as our Rule

25    16 obligations.

1          What else?

2          I have problems getting some additional materials that we

3     have discussed, such as some more complete -- they asked for

4     some pictures that were shown to Mr. Mikerin during his

5     interview to compliment the audio recording, as well as the 302

6     that's been provided with his statements during the interview.

7          And then we're going to be providing them some discovery,

8     which probably not directly relevant to the extortion case, but

9     we're going to make available to them all the electronic

10    discovery with the electronic materials that were seized from

11    the Tenam offices in October of 2014, when that was searched,

12    even though the extortion case really ends in 2011 as it's

13    charged right now.

14         So there is some ongoing investigation into other

15    potential charges.  As part of that, we are in the process of

16    giving MLATs out.  There's a lot of wending through various

17    wickets, but that has to happen.  That's part of the broader

18    investigation though, Your Honor, and we're not going to rely

19    on that to hold up trial.

20         If defendant wants to go to trial on the freestanding

21    extortion case that's charged right now, we're not going to

22    rely on those pending MLATs to use in trial on that particular

23    charge, and we'd be ready to go to trial whenever the Court has

24    time available.

25              THE COURT:  I see.  So just to clarify, because I

1  don't think I had this understanding last time, the attempts to

2  gain information from other countries are related to potential

3  new charges, not to the pending indictment.

4         MR. AKE:  They could help shed light on where the

5  funds were going, but they're not essential to proving the

6  elements required by the extortion charge, Your Honor.  So

7  we're not going to -- we don't need it to go to trial.  It

8  would be nice, and it's probably relevant.  If we get that

9  information back, then we would plan to use it if we get it

10  back in time, but we're not going to rely on dependency of

11  those to hold up trial on this particular charge.

12         THE COURT:  I see.  So, Mr. Lopez, first of all, if

13  you can just give me a sense of whether Mr. Ake missed anything

14  or if you have a different view of anything.  But also, if I

15  recall, the last time we had said that once the Government

16  produces discovery by around the 16th, which, apparently,

17  they've come pretty close to doing, that you would request

18  until mid March, March 13th to consider any potential motions

19  arising from those materials.  So let me know if that still is

20  the schedule you'd like to follow.

21         MR. LOPEZ:  Yes, Your Honor, thank you.

22      On the first question, the overview of discovery

23  provided, Mr. Ake generally got it right.  We are in dispute as

24  to whether or not they're in compliance with Rule 16.  We've

25  asked for materials related to that broader investigation.  We

1  think that those are relevant and material to preparing our

2  defense, and we're hoping we can work through those issues with

3  Mr. Ake.

4          As well as the Giglio material he referenced, related to

5  the main witness of the extortion charge, basically, the only

6  witness and the whole substance of the case, we're hoping to

7  work through with Mr. Ake.  The bulk of that stuff to get four

8  weeks ahead of trial is not workable, but I think we can work

9  through that with them.

10          So those are the only kind of added flavor to the

11  discovery issues that I wanted to raise.

12          As far as the motions date of March 13th, we want to keep

13  that schedule.  I think we can hit that schedule.  So we're

14  good with it.

15          THE COURT:  Okay.

16          MR. LOPEZ:  Now, if we get additional discovery that

17  leads us to believe that we need to extend that time frame,

18  we'll discuss it with the U.S. Attorney's Office and alert the

19  Court if necessary.

20          THE COURT:  So does anyone have a sense at this point

21  whether any motions that would be filed would either be

22  dispositive in some fashion or would potentially lead to a

23  guilty plea or some other resolution?

24          I ask, just given the nature of this case and the fact

25  that the defendant is in detention right now, whether we should

1  be setting a trial date now or whether it's premature to do

2  that.

3          MR. JACOBSON:  Your Honor, hi.  This is Billy

4  Jacobson.  We will be filing dispositive motions on the 13th,

5  and we would ask the Court to set a trial date.

6          THE COURT:  So actually -- well, Mr. Ake, do you have

7  a view on whether we should set a trial date today?

8          MR. AKE:  No objection, Your Honor.  That's fine to

9  put a mark on the wall.

10          THE COURT:  Okay.  I mean, to one extent, I think

11  typically, if we're not sure this case is going to trial, I

12  don't usually like to clutter up the calendar.  So if you

13  actually have motions you think will dispose of the case, then

14  that sort of cuts against it.  But again, given the situation

15  we have with the defendant now, I think if the parties want to

16  set a date, we can set a date.

17      Before we do that though, I understand I do have a

18  pending motion to reconsider the detention issue, as well as a

19  notice that the defense was planning to file a supplemental

20  memorandum on that this month.  Can anyone tell me the status

21  of that?

22          MR. LOPEZ:  Sure, Your Honor.  This is Jonathan Lopez

23  again.  We're going to file something today on that point and

24  informed the U.S. Attorney's Office as well.

25          THE COURT:  Mr. Ake, you probably haven't seen it

1   yet, but can you tell me now whether you're going to want to

2   have time to respond in writing to that?

3             MR. AKE:  Oh, absolutely, Your Honor, we'll respond.

4             THE COURT:  And then do we have a sense on whether

5   we're going to need a hearing on that?

6             MR. LOPEZ:  We're asking for a hearing, Your Honor.

7   Jonathan Lopez again.

8             THE COURT:  Okay.  Well, we can try to at least pick

9   a date for that now since we're here.  I don't know how

10  extensive the argument is.  The standard is two weeks to

11  respond to a motion.  Does anyone have any sense whether that

12  should be shorter or longer in this case?

13            MR. AKE:  That's appropriate, Your Honor.  This is

14  Adam Ake.  That sounds appropriate, Your Honor.

15            THE COURT:  Okay.  So if it's going to be filed

16  today, then the Government's response will be due -- let me

17  just pull up the calendar here -- the 13th of February.

18       Mr. Lopez and Mr. Jacobson, do you have a sense of

19  whether you'll want to be able to reply in writing, or would

20  you rather just go straight to the hearing at that point?

21            MR. LOPEZ:  I think we'd want to reply but not need a

22  ton of time to do that.  So if we had four days to reply, and

23  then have the hearing maybe two days after that.

24            THE COURT:  Okay.  Well, the 16th, I think, is a

25  federal holiday.  Don't know if that matters to you.  So you

1  would be looking at filing sort of towards the end of the week

2  of the 16th.  So perhaps we could schedule a hearing for the

3  week of the 23rd.

4      Unfortunately, I'm out of town all week that week for a

5  training program.

6          MR. LOPEZ:  What about the 19th or the 20th then?

7  We'll just get our reply in before the hearing.  How long would

8  the Court want to have the reply before it held the hearing?

9          THE COURT:  I honestly don't know the nature of what

10  we're dealing with here, how much of this is just a factual

11  discussion and whether there's legal theorys that are being put

12  forth.  So I couldn't tell you based on that right now.

13          MR. LOPEZ:  It's not at all very different from what

14  was filed before, so there's not a whole lot new there.

15      And, indeed -- now, I'm not sure if the Government really

16  needs two weeks to file a response.  They're not seeing

17  anything new.  They already know the one new thing that's in

18  there.  And so maybe we can shorten it on the Government's

19  side, and we'll shorten our response time and compress it.

20      I'm also being mindful of if we're going to be able to

21  get him out, we'd like to do that sooner rather than later.

22          THE COURT:  No, I understand.

23          MR. AKE:  Your Honor, this is Adam Ake for the

24  Government.  If the 20th is available for the Court, that would

25  work for the Government.  But we would like to have the full

1  time to respond, normal time, just because we didn't prepare a

2  written response last time, so we don't have anything canned

3  and ready to go.  It sounds like the defense is just modifying

4  their existing motion, but that was -- I think that was like a

5  30-page motion, Your Honor.  So we would like to have some time

6  to prepare a response adequate to the task.

7          MR. LOPEZ:  The 20th works for us as a final end

8  date.

9          THE COURT:  Why don't we do this.  We can have a

10 hearing on the 20th, perhaps in the morning at 10 a.m.  Does

11 that work for everyone?

12         MR. AKE:  Yes, Your Honor.

13         MR. LOPEZ:  Yes.

14         THE COURT:  And could I get the reply by close of

15 business on the 17th?

16         MR. LOPEZ:  Yes.

17         THE COURT:  Okay.  Obviously, depending on the nature

18 of this, we may be ruling at that point, or I may need to take

19 it under advisement.  I can't tell you right now.  But I do

20 understand the nature of a detention motion so, certainly, will

21 not let this sit.  We'll try to resolve it as quickly as

22 possible, naturally.  So that's the schedule for that motion.

23         And then we already have a schedule for pretrial motions

24 to be filed by March 13th.  I don't think we need to set a

25 schedule right now because we don't know how many or what type

1   of motions it will be.  But the default would be the Government

2   would respond two weeks after that.

3       Isn't there also a pending suppression motion that hasn't

4   been responded to?

5       MR. LOPEZ:  Well, there is, Your Honor, but our

6   understanding was it was sort of a placeholder, and we were

7   planning to file another suppression motion on March 13th

8   that's more substantive, and we'd expect the Government would

9   respond to that.

10      THE COURT:  Right.  Am I correct the parties agree

11  there's no need to respond to the current motion until after

12  the March 13th date; is that correct?

13      MR. LOPEZ:  Yes, Your Honor.

14      MR. AKE:  Yes, Your Honor.

15      THE COURT:  So as of March 13th, I think the default

16  will be the Government will respond in two weeks.  If it turns

17  out there's seven motions and the Government needs more time,

18  then hopefully you can jointly agree on something or the

19  Government can file a motion for more time at that point.

20  Unless anyone sees any other reason to extend the briefing

21  schedule now.

22      MR. JACOBSON:  This is Mr. Jacobson.  We don't, Your

23  Honor.

24      MR. AKE:  No, Your Honor.  Thank you.

25      THE COURT:  I didn't catch the first comment.  Are

1   both sides fine leaving it the way it is right now?

2            MR. JACOBSON:  Yes.

3            MR. AKE:  Yes, Your Honor.  This is the Government.

4            THE COURT:  Okay.  Well, then the next step would be

5   a trial date.  First of all, with respect to the motions, we're

6   anticipating, you said, perhaps a suppression motion or a

7   revised suppression motion.

8         Are there other motions that you can tell us, generally,

9   what they are now, in terms of having a sense of what needs to

10  be resolved prior to trial and what sort of can bump up on the

11  eve of trial?

12           MR. JACOBSON:  Well, I think we'll probably file a

13  dispositive motion relating to the sufficiency of the

14  indictment.

15        Hopefully, we won't have any discovery type motions to

16  file because we'll be able to work things out with the

17  Government sufficiently before then, but we'll leave that

18  possibility open.

19           THE COURT:  Okay, so I imagine on the sufficiency of

20  the indictment, the Government will certainly want to brief

21  that.

22        You're not sure of any evidentiary issues right now, it

23  sounds like.

24        So when would the parties think would be appropriate for

25  a trial generally, both in terms of having the case prepared,

1  and then we can talk about calendars for individual counsel and

2  for the Court.

3          MR. JACOBSON:  Your Honor, this is Billy Jacobson.

4  We would request a date on or about June 1st, obviously,

5  keeping the Court's calendar in mind.

6          THE COURT:  Does the Government have a view on that?

7          MR. AKE:  Your Honor, generally, the timing works.

8  It's just I have a personal conflict.  My wife is due with our,

9  admittedly, fourth child in May.  So it's not as much of an

10  emotional event as the first couple but --

11          THE COURT:  They're all important, aren't they,

12  Mr. Ake?  You're on the record.

13          MR. AKE:  The drama goes down after the first one.

14          MR. LOPEZ:  Mr. Ake, as someone with four children, I

15  can assure you you might not even know the new one's name.

16          THE COURT:  I'm sorry, Mr. Ake.  I didn't catch the

17  dates that might be a problem.

18          MR. AKE:  My wife's due May 27th, Your Honor.  So

19  that's the only issue.

20          MR. WERNICK:  Your Honor, this is Ephram Wernick from

21  DOJ.  I have a trial scheduled in May, that may run to the end

22  of May.  So I'm generally okay in June as well, but perhaps mid

23  June would work better.

24          THE COURT:  How long do we think this trial would

25  last?

1            MR. AKE:  Your Honor, this is the Government.  I

2    think four days, at most, on this particular -- depending on

3    the length of the defense case, but I think the Government's

4    case will be two full days, maybe spilling into a third.

5            MR. LOPEZ:  It's hard for us to estimate what our

6    defense case would be at this point, Your Honor, to be honest.

7    I don't think we're talking about a three-week defense case.  I

8    don't know if it's a two-day defense case or a seven-day

9    defense case.

10           THE COURT:  So should we block this as a two-week

11    trial or more or less?

12           MR. LOPEZ:  I think two would be safe from the

13    defense perspective.

14           THE COURT:  Well, let me look at the calendar now.

15    Well, let's see.  So May is not good, I think, for at least one

16    of the counsel.

17        The first week of June is okay for me, although I know

18    that it's not great for Mr. Ake.

19        And then the first half of the following week, there's

20    a -- I'll be out of town for a Fourth Circuit activity.

21        So it would either be starting the second week on a

22    Thursday, which is not ideal, or going to the following week.

23    If we started on the 16th though -- or if we started the trial,

24    let's say, on that Thursday, we have the week of the 16th.  But

25    then, I think as Mr. Ake knows because it's his case, we have a

1  case on the 23rd.

2        MR. AKE:  Yes, Your Honor.  I'm positive that's going

3  to go to trial.

4        THE COURT:  Yeah, we've talked about that one.

5        MR. LOPEZ:  I think that would be tough, Your Honor,

6  to maybe squeeze that in if you're sure this case on the 23rd

7  is going to go to trial.

8        THE COURT:  Yeah, I wouldn't want to have us start on

9  the 16th.  It sounds like if we started the Thursday before,

10  we'd still not feel totally comfortable we'd be done.

11        So I think the options -- it sounds like none of these

12  are great for everybody.  One would be to start on June 2nd and

13  then take a break, after the first week, until Thursday the

14  11th.  And that's right after Mr. Wernick's trial and right

15  after or around the time of the birth of the child.

16        The other option would be to go into July, which is

17  generally okay for me.  Obviously, probably Mr. Ake would want

18  some time between the two trials, at least some period of time.

19        I could also do earlier in May or possibly April, but I

20  don't know if people think that you'll be ready by then.

21        MR. AKE:  Your Honor, from the Government's

22  perspective, if we try this alone, it's not a hugely complex

23  case.  There's not that many witnesses.  I mean, we could go

24  mid July if that works for the Court.

25        MR. LOPEZ:  I'm sorry, Judge.  Our concern is with

1   our detained defendant -- client, rather.  And so mid July, I'm

2   just not super comfortable with mid July for that reason and,

3   really, for that reason only.

4        We'd be more inclined -- I know there's issues with this

5   with Mr. Ake's pregnancy or his wife's pregnancy, but we'd be

6   more inclined to shift it back into May.

7             THE COURT:  You're more inclined to do what?  I'm

8   sorry.

9             MR. LOPEZ:  To shift it back into May, as you

10  suggested.

11            THE COURT:  Well, I know that Mr. Wernick has an

12  issue.  Remind me again what your schedule is.

13            MR. WERNICK:  Your Honor, I have a trial set in on

14  May 4th in Orlando, and that will take, I think realistically,

15  at least two weeks.  It's scheduled for four.  It won't go

16  four.  But it is on the schedule for four at the moment.  So

17  May is difficult for me.

18            MR. AKE:  Your Honor, how does the Court's calendar

19  look the second half of April?

20            THE COURT:  Well, we have a two-week trial starting

21  on the 21st, although that one -- it's a criminal case.

22  Ms. Johnston has it.  You can talk to her about that.  I don't

23  think that's a firm trial.  We scheduled it because we think

24  it's a realistic possibility, but I don't think it's firmly

25  going to be a trial.

1        The week of 14th is available but, again, it bumps up

2   against that.

3        We could double book for the 21st because I think that's

4   not a sure thing.  It does create some uncertainty, of course,

5   which no one likes.

6            MR. WERNICK:  Your Honor, I'll make myself available

7   for the Court and for this trial.  That being said, it is a

8   fairly complex case, a security fraud case that I'm trying on

9   May 4th.  It's something I had planned the last two weeks of

10  April to be in Florida --

11           THE COURT:  No, I understand.  And you said May 18th,

12  your other trial is probably still going?

13           MR. AKE:  Your Honor, you're speaking to Mr. Wernick,

14  right?

15           THE COURT:  Yes.

16           MR. WERNICK:  Oh, I'm sorry, Your Honor.  May 4th is

17  the trial date.

18           THE COURT:  Right, and I think you said it would be a

19  two-week trial.

20           MR. WERNICK:  Well, it's on the books for a four-week

21  trial.  Since then, one person has pled, so I think we can at

22  least cut off a week.  I was saying two weeks is being very

23  optimistic, but it will be at least two weeks.

24           MR. JACOBSON:  Your Honor, this is Bill Jacobson.  If

25  I can, just because this is obviously proving difficult,

 1  another thing to factor is this ongoing investigation and the

 2  likelihood of a superseding indictment that would maybe negate

 3  this trial date we're trying to come up with.

 4          So I wonder if we could maybe, perhaps, get some more

 5  clarity from the Government on the likelihood of that happening

 6  before these dates that we're throwing around.

 7                  THE COURT:  Good point.  Mr. Ake?

 8                  MR. AKE:  Your Honor, I think a superseding

 9  indictment before May may happen but I -- you know, I don't

10  want to promise it and then not deliver and hold up this trial.

11  They are different facts.  It's going to be different

12  witnesses.

13          So it may make sense -- again, part of this may just be

14  how the detention hearing comes out.  If it goes their way,

15  that may reduce their desire to go forward immediately on this

16  trial and then --

17                  MR. WERNICK:  I would just say on behalf of the

18  Department of Justice, Your Honor, obviously, with the ongoing

19  investigation, we can only say so much.  We are working and we

20  are -- I would say at some point I believe we'll have evidence

21  sufficient to bring a new indictment.  I don't know, time wise,

22  whether that's going to be before -- if we're looking at April,

23  then that would be possibly difficult, though I wouldn't say

24  impossible.

25          And only -- and, obviously, we are very much interested

1  in keeping Mr. Mikerin detained for the reasons that are

2  already on the record.  So we're obviously not conceding any of

3  that for the purpose of moving a trial date up.

4       But it's obviously hard to answer that question without

5  revealing material that's part of the investigation at this

6  stage.  We possibly could have an offline discussion ex parte

7  if we were trying to get into some materials the Court would be

8  interested in, but at this stage, I think that's the best

9  answer we can probably give.

10       THE COURT:  Okay.  Well, right now I see two options.

11 We can always, if, after the detention hearing, if he remains

12 detained and there's an eagerness to move forward earlier, we

13 can revisit whether things have changed on my calendar and

14 other calendars for counsel.

15       But why don't we choose between -- I think the only

16 options I see right now are June 2nd, with the weakness of that

17 being that the second week wouldn't start until the 11th, and

18 if people find that to be problematic, I would understand that.

19 Or July 14th.

20       MR. AKE:  Your Honor, for the Government, July 14th

21 is our preference.

22       MR. LOPEZ:  The defense preference is June 2nd, Your

23 Honor.

24       THE COURT:  So what, if any, difficulties do people

25 see with a three-day break in the middle of the trial?

1          MR. AKE:  Your Honor, for the Government, it's not a

2  difficulty with the break.  It's more of a preparation

3  difficulty with -- you know, Mr. Wernick and I are both going

4  to have conflicts for different reasons the week or two leading

5  up to that date.  So that's the bigger issue for the

6  Government.

7          THE COURT:  So it's primarily going to be the two of

8  you?

9          MR. AKE:  Yes, Your Honor.

10          THE COURT:  Mr. Crowell is not really directly

11  involved in the trial, you don't expect?

12          MR. CROWELL:  Judge, this is Jim.  I don't see the

13  need to put three trial lawyers on this small a case.  If we go

14  to the bigger superseding case and we end up trying a larger

15  case, if they revisit that.  Frankly, two trial lawyers seems

16  too large for the Government --

17          THE COURT:  No, I understand.  I just wanted to make

18  sure I knew who was involved.

19      Well, why don't we -- I'm not a huge fan of breaking

20  things up in the middle if we don't have to.  So let's set it

21  down for the 14th of July.

22      I would appreciate, since, again, I think the detention

23  issue -- I don't really know the issues at all.  So again, we

24  can look and see if calendars have changed by the time that

25  proceeding ends.  So I would ask if the parties could keep --

1  refrain from adding things into May and June, if possible.

2  Because if certain things clear, cases settle or plead out,

3  things may open up for all of us.

4       So why don't we start with the 14th for now, and then

5  we'll address it further if it warrants further discussion

6  later.

7                 MR. AKE:  Thank you, Your Honor.

8                 MR. WERNICK:  Yes, Your Honor.

9                 MR. LOPEZ:  Thank you, Your Honor.

10                THE COURT:  Anything else that we should discuss

11 today?

12                MR. LOPEZ:  Not from the defense, Your Honor.

13                MR. AKE:  No, thank you, Your Honor.  Appreciate it.

14                THE COURT:  So why don't we -- again, just to recap,

15 we're expecting defense motions on -- well, we're expecting the

16 detention brief today.  The Government has two weeks to

17 respond.  The defense will reply by the 17th, and we'll have a

18 hearing on the 20th at 10 a.m.

19      The defense's pretrial motions are due on March 13th,

20 with the standard briefing schedule following that, unless

21 there's a need to change that, which we can address once we

22 know what the motions are.

23      We have a trial date right now of July 14th, blocking out

24 two weeks.  Again, we can revisit those issues as we get

25 closer.

1          Anything else that we decided or discussed today?

2          MR. LOPEZ:  Just one thing, Your Honor.  This is

3  Jonathan Lopez.  Can the March 13th date be reciprocal motions?

4  I don't know if the Government is planning on filing any

5  pretrial motions, but it would seem sufficient if they're all

6  kind of traded.

7          THE COURT:  I'm sorry, what did you want to have on

8  the 13th?

9          MR. LOPEZ:  Any Government motions filed.

10          MR. AKE:  That's fine, Your Honor.  If there's any

11  Rule 12 motions, we'll file them by then.

12          THE COURT:  Well, are we talking about things like

13  404(b) at this point, or is that something we should do later?

14          MR. LOPEZ:  This is Jonathan Lopez again.  We

15  understand the Government has said that they are not

16  introducing any 404(b) or inextricably intertwined evidence.

17  But if they have other motions of a pretrial nature -- I don't

18  want to put any ideas in their head, but motion to exclude or

19  prevent argument or those kind of things.

20          MR. AKE:  Well, Your Honor, motions in limine usually

21  aren't Rule 12 pretrial motions.  At least the practice that

22  we've got is to file those right up through and continuing

23  during trial as appropriate.

24      We can give 404(b) notice by March 13th, but I wouldn't

25  expect the Court to rule on it until, typically, during trial,

1   depending on how things are proceeding and once the Court has a

2   better understanding of how those particular items, if they are

3   404(b), should be resolved.  A lot of times they don't become

4   clear until trial.

5          THE COURT:  No, I agree.  I think having notice by

6   then of what you currently have available, whether you plan to

7   use would be a good idea.  I assume Mr. Lopez would want that;

8   is that correct?

9          MR. LOPEZ:  Your Honor, I'm a little confused on

10  that.  We had a conversation the other day where they said they

11  were not using 404(b), and they had a self-imposed deadline of

12  last Friday to tell us whether or not they would.  Now it

13  appears that they may is a bit confusing though.

14         THE COURT:  Well, I don't know if it necessarily -- I

15  imagine they don't want to completely foreclose -- I think

16  sometimes, as you're putting your case together, you may notice

17  something.  So I don't necessarily view that as indicating that

18  everything has changed, unless the Government will tell us that

19  it did.

20         MR. CROWELL:  Well, Your Honor, I just got notice

21  that Mr. Ake accidentally hung up his phone.  So you may want

22  to reconnect him.

23         But I can say I was part of that call, and I understand

24  there were discussions about 404(b) as it relates to discovery

25  and the broader investigation and had explained to defense

1  counsel, basically, to the extent that they were seeking any

2  material or 404(b) with that, we were not intending to

3  introduce the broader investigative -- generally, that kind of

4  material.  So I do agree that we have said that.

5          But like you said, Your Honor, as we develop and prepare

6  for trial, we might come across other information that we may

7  want to bring in.  So the March 13th date, if that's the date

8  to inform defense counsel, given the four months to prepare for

9  trial at that stage, I think that's appropriate.

10         I would ask at this stage if there is a way to dial

11  Mr. Ake back in.  He just did e-mail me to let me know.  So I

12  can try to conference him myself, but I don't --

13             MR. LOPEZ:  That's fine for us, Your Honor, by the

14  way, both conferencing back in and the March 13th date.  We may

15  not need to actually conference him back in if that's the end

16  of it.

17             MR. CROWELL:  I appreciate that.  If Your Honor is

18  okay with it, it probably will take just a moment.  I can call

19  him right back --

20             THE COURT:  Is it easier for us to do that or not?

21  I'm not sure.  To dial in somebody who was disconnected?

22             THE COURTROOM DEPUTY:  We could, Your Honor.

23             THE COURT:  Can you conference him in now?

24             MR. CROWELL:  His desk number, I believe, is 301 --

25             THE COURTROOM DEPUTY:  I don't know if I can get him

1  in now since we're already --

2          MR. CROWELL:  I might be able to do it pretty

3  quickly, Your Honor.

4          THE COURT:  Why don't you try it then.

5          MR. CROWELL:  Thank you.  Okay.  Okay, I've got

6  Mr. Ake on the line.  Is everyone else here?

7          THE COURT:  Yes, we're here from the court.

8          MR. AKE:  Your Honor, I apologize.  I hit the wrong

9  button while I was trying to do something.

10         THE COURT:  I've done that before.  Sometimes if the

11 button is red, there's a temptation to push it even if it's not

12 the right one.

13     So I think we all agree that any 404(b), there will be

14 notice provided by March 13th.  But I agree with Mr. Crowell

15 that any motions in limine can be filed later, in part because,

16 as I understand, defense is only going to get certain materials

17 at this point, I guess a month before trial, Jencks and

18 otherwise, so there could be some issues with that.

19     I think with the trial date set, I will send out sort of

20 a pretrial schedule, try to figure out a pretrial conference,

21 if we need one.

22     And then also -- I would prefer, even though it's correct

23 that sometimes these motions can't be resolved until the middle

24 of trial, that to the extent there's knowledge of any

25 evidentiary motions, that I'd like to have a schedule in the

1    weeks leading up to the trial to have any written filings

2    submitted in advance.  And so I think motions in limine on

3    pieces of evidence can be saved until that time and not

4    necessarily filed by March 13th.

5            MR. AKE:  Your Honor, I agree that's appropriate,

6    particularly if it gets -- I think the Court certainly is well

7    within it's discretion to set some limits on motions to

8    exclude.  And certainly, if the Government has any, we would

9    file those promptly after any Giglio materials are provided.

10           THE COURT:  Right.  I'm just envisioning a few weeks

11   before trial having a date for both sides to file either

12   motions to exclude or motions for a pretrial ruling to include

13   or to admit pieces of evidence.  And so, again, those don't

14   need to be addressed by March 13th.

15           I think that's all for today.  Anything else we

16   should discuss?

17           MR. LOPEZ:  Not from the defense, Your Honor.

18           MR. CROWELL:  No, thank you, Your Honor.

19           THE COURT:  Thank you very much.

20       (The hearing concluded at 10:45 a.m.)

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Cindy S. Davis, Federal Official Court Reporter in and

4   for the United States District Court for the Southern District

5   of Maryland, do hereby certify that I reported, by machine

6   shorthand, in my official capacity the proceedings had and

7   testimony adduced upon the motions hearing in the case of

8   United States of America versus Vadim Mikerin, 14-cr-0529-TDC,

9   in said court on the 30th of January, 2015.

10         I further certify that the foregoing 26 pages constitute

11  the official transcript of said proceedings as taken from my

12  machine shorthand notes to the best of my ability.

13         In witness whereof, I have hereto subscribed my name this

14  5th of February, 2015.

15

16

17

18

19

20  _____
    CINDY S. DAVIS, RPR
21  FEDERAL OFFICIAL COURT REPORTER

22

23

24

25