IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>VADIM MIKERIN | Criminal No.: 8:14-CR-00529-TDC |

**DEFENDANT VADIM MIKERIN'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE INDICTMENT FOR PRE-INDICTMENT DELAY**

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, Defendant Vadim Mikerin respectfully moves this Court to dismiss the Indictment due to prejudicial pre-indictment delay. As detailed further below, in 2009, the Government began an investigation into the alleged criminal activity set forth in the Indictment, and the last overt act of the alleged conspiracy occurred in January 2012. Despite this, and despite knowing in early-2011 that an alleged co-conspirator and key defense witness was terminally ill, the Government delayed seizing key evidence -- which was then destroyed -- and delayed bringing the Indictment until the end of 2014. Over the course of the 5 year investigation, with a paid informant as a member of the investigative team the entire time, the Government made just two brief video recordings of interactions between Mr. Mikerin and the informant and just *one* audio recording of conversations between the two. This remarkable lack of evidence makes the Government's delay and the consequences thereof all the more prejudicial. Without either access to either lost evidence or the key lost witness, Mr. Mikerin has suffered irreversible prejudice.

I. **FACTS**

    A. **Alleged Scheme**

On October 29, 2014, Mr. Mikerin was arrested on a criminal complaint alleging money laundering and an elaborate extortion scheme.[1] On November 12, 2014, the Grand Jury returned a more limited, single-count Indictment charging Mr. Mikerin with extortion under 18 U.S.C. § 1951(a).[2] The Indictment alleges an extortion conspiracy lasting less than three years, beginning in 2009 and ending in January 2012.[3] More specifically, the Indictment alleges that Mr. Mikerin demanded payments from Douglas Campbell in order to maintain a three-month lobbying contract he had executed with Mr. Mikerin's employer, JSC Techsnabexport ("Tenex"),[4] as well as to obtain later contracts.[5] Mr. Mikerin allegedly directed Campbell to make these payments to offshore entities.[6] Although the Indictment is void of critical details such as how and when these demands were first made, the Indictment indicates that the final overt act in connection with the alleged conspiracy occurred in January 2012, after Campbell had willingly entered into and completed two additional contracts.[7] The Indictment alleges that Mr. Mikerin was assisted by three co-conspirators, only one of whom was a United States citizen, Rod Fisk.[8] Meanwhile, while all of this was allegedly happening, Campbell was serving as a paid informant for the FBI.

---

[1] Compl. and Gadren Aff. in Support of Criminal Compl., ECF No. 8.

[2] Indictment, ECF No. 11.

[3] *Id.* at ¶ 16.

[4] *Id.* at ¶ 22(b). We believe that Campbell is referenced in the Indictment as "Victim One."

[5] *Id.* at ¶¶ 22(e) & (h)

[6] *Id.* at ¶ 21.

[7] *Id.* at ¶ 22(u).

[8] *Id.* at ¶¶ 11-13. We believe that Mr. Fisk is referenced in the Indictment as "Co-conspirator 1."

### B. Mr. Mikerin's Relationship With Mr. Fisk

Messrs. Mikerin and Fisk were long-time acquaintances who engaged in several business transactions through their respective companies, including contracts between Tenex and Transport Logistics International ("TLI") for the transportation of low-enriched Russian uranium.[9] Following Mr. Fisk's departure from TLI, Messrs. Mikerin and Fisk had subsequent business dealings, including a consulting agreement between Tenam USA ("Tenam"), a United States subsidiary of Tenex, and IFS LLC, a consulting company owned and operated by Mr. Fisk.[10] Additionally, Mr. Fisk served as Mr. Mikerin's professional mentor, beginning in approximately 2002 or 2003, while Mr. Mikerin was still living in Russia. Notably, it was Mr. Fisk who encouraged Mr. Mikerin to move to the U.S.[11]

### C. Mr. Fisk's Introduction of Campbell

As asserted by the Government, Mr. Fisk first introduced Mr. Mikerin to Campbell in approximately 2009,[12] so obviously Messrs. Fisk and Campbell knew each other prior to that time. And, Campbell and Mr. Fisk appear to have known each other quite well. Mr. Fisk is listed on Campbell's company website as a member of the leadership team with "extensive experience in international nuclear energy issues."[13] And, as acknowledged by the Government, it was Mr. Fisk who in 2009 recommended that Mr. Mikerin engage Campbell for consulting services.[14]

---

[9] Government's Response to Defendant's Motion for Release Pending Trial, ECF No. 37, at 2.

[10] *See, e.g.,* Exhibit A (Document ID KSVM0001442); Exhibit B (Document ID KSVM0001411). All documents cited herein bearing a "KSVM" prefix or Bates numbers were produced by the Government in connection with this prosecution.

[11] *See, e.g.*, Exhibit C (Document ID KSVM0001472).

[12] Gadren Aff. in Support of Criminal Compl. at ¶ 13.

[13] Exhibit D (Screenshot of Sigma Transnational website, *available at* http://www.sigmatran.com/page-409312).

[14] Government's Response to Defendant's Motion for Release Pending Trial at 2.

3

Mr. Fisk remained closely connected to Campbell's consulting work for Tenex throughout the relevant contractual periods, and often corresponded with Mr. Mikerin regarding the quality and efficacy of Campbell's work.[15] Mr. Fisk appears to have edited Campbell's work product provided to Tenex,[16] as well as served as a go-between between Mr. Mikerin and Campbell.[17] Prior to Mr. Mikerin's move to the United States, Mr. Fisk even proposed creating a new entity with Campbell that could provide consultation services to Tenex.[18] Mr. Fisk, not Mr. Mikerin, had the primary relationship with Campbell, a relationship that existed long before the conduct set forth in the Indictment.

### D. Mr. Fisk's Illness and Death

In early 2011, Mr. Fisk was diagnosed with an aggressive form of cancer and received a grim prognosis. In March 2011, Mr. Fisk informed Mr. Mikerin of his diagnosis, and expressed concern about his survival as the cancer had already spread to his liver rendering surgery impossible.[19] Mr. Fisk's health deteriorated over the course of 2011, and he died on August 12, 2011.[20] Given their close business relationships and prior ties, Campbell was aware of Mr. Fisk's deteriorating health.

### E. Mr. Fisk's Computer is Destroyed

In approximately October 2011, closely after Mr. Fisk's death, the FBI visited Mr. Fisk's widow, Deborah Fisk, and took photographs of the contents of Mr. Fisk's safe.[21] Despite having the opportunity, and being in the midst of an investigation then in its third year, the Government did not

---

[15] *See, e.g.,* Exhibit E (Document ID KSVM0001515); Exhibit F (Document ID KSVM0001338); Exhibit G (Document ID KSVM0001430).

[16] *See, e.g.*, Exhibit G (Document ID KSVM0001430).

[17] *See, e.g.,* Exhibit H (Document ID KSVM00001423); Exhibit I (Document ID KSVM0001586).

[18] Exhibit J (Document ID KSVM0001500).

[19] Exhibit K (Document ID KSVM0001448).

[20] Exhibit L (screenshot of State of Maryland Register of Wills, Estate Record for Rodney H Fisk).

[21] Gadren Aff. in Support of Criminal Compl. ¶ 19.

seize, subpoena or image Mr. Fisk's computer, which contained relevant information concerning the alleged scheme and Mr. Fisk's involvement. In fact, the Government did not attempt to seize the computer until approximately October 2014, *three years* after Mr. Fisk's death. It was then that the Government learned that at some point in the intervening three years, Mrs. Fisk had destroyed Mr. Fisk's computer. Neither the Government nor Mrs. Fisk obtained or retained a copy of the computer's hard drive.

## II. **LEGAL STANDARD**

Due process under the Fifth Amendment requires that a criminal defendant be treated with "that fundamental fairness essential to the very concept of justice."[22] The Supreme Court has recognized the statute of limitations may not always ensure that charges brought against defendants comport with constitutional principles of due process and in cases of actual prejudice, the Fifth Amendment protects defendants against excessive pre-indictment delay.[23]

The Fourth Circuit has established a two-pronged inquiry for considering contentions of due process violations by pre-indictment delay: (1) whether the defendant has suffered actual prejudice and (2) the Government's reasons for the delay, balancing the prejudice to the defendant with the Government's justification for delay.[24] With regard to the second prong, the court must determine whether the Government's reasons for the delay and the subsequent prejudice to the defendant "violate[d] fundamental conceptions of justice or the community's sense of fair play and decency."[25]

---

[22] *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982).

[23] *See United States v. Marion*, 404 U.S. 307, 324 (1971); *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

[24] *See United States v. Lynch*, 1995 U.S. App. LEXIS 13494 (4th Cir. 1995); *United States v. Automated Medical Labs., Inc.*, 770 F.2d 399, 403-04 (4th Cir. 1985).

[25] *Automated Medical Labs., Inc.*, 770 F.2d at 404 (internal quotation marks omitted); *United States v. Harris*, 551 Fed. Appx. 699 (4th Cir. 2014).

### III. ARGUMENT

#### A. Mr. Mikerin Has Suffered Actual Prejudice as a Result of the Government's Unjustified Delay

##### i. The Government's delay resulted in the loss of a key witness and key evidence in a case with very little of either

The current prosecution is predicated on the testimony of a single witness, Campbell. Had this prosecution been brought in a timely manner, Mr. Fisk would have served as a critical defense witness able to exculpate Mr. Mikerin, as he initiated the relationship between Campbell and Tenex, and discussed the true nature of the alleged payments with Campbell.

The loss of key witnesses and the resultant prejudice to the defendant's ability to defend himself are grounds for dismissal when caused by Government delay.[26] In *United States v. Sample*, the defendants were charged with mail fraud for defrauding individuals through the sale of memberships in a discount buyers' club.[27] The court dismissed the indictment based on actual prejudice suffered by the defendants due to the death of a witness and the loss of witnesses' memories, caused by the Government's unjustifiable and unnecessary delay.[28] In particular, the death of a key witness who was the individual most familiar with the club other than the defendants, caused the defendants actual prejudice because the witness' testimony would have been material to the defense.[29] Furthermore, the witness died eleven months after the Government had completed its investigation and accumulated enough evidence to prove defendants' guilty beyond a reasonable doubt.[30]

---

[26] *See, e.g. Howell v. Barker*, 904 F.2d 889 (4th Cir. 1990); *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976).

[27] *United States v. Sample*, 565 F. Supp. 1166, 1167 (E.D.Va. 1983).

[28] *Id*. at 1175.

[29] *Id*. at 1176.

[30] *Id*. at 1177.

In *United States v. Sabath*, the defendant was charged with arson for burning down his own building.[31] The court found that the death of three key witnesses, combined with the impaired memories of fact witnesses and lost evidence, was sufficient to establish prejudice due to pre-indictment delay because, the court found, the testimony of any of those witnesses "could well have been outcome determinative."[32] In addition, several of the witnesses' deaths were foreseeable in that one key witness was the defendant's father who was seventy-eight at the time of the fire and suffered from a heart condition of which the Government was aware.[33] Additionally, as the Government knew, another key witness was suffering from cancer.[34] The court noted that the Government "was aware that its case was a circumstantial arson case and that Defendant's main alibi witness, his father, was seventy eight years old."[35]

The loss of key evidence due to the Government's delay can necessitate the dismissal of an indictment. In *United States v. Gross*, defendants were charged with making false representations to First National Bank ("FNB") to obtain loans for numerous properties.[36] The court found that missing documents, including loan applications, caused actual prejudice to the defendants because it prevented them from conclusively showing who made false statements to FNB and when those statements were made.[37] The court noted that the Government's delay in bringing charges resulted in the near

---

[31] *United States v. Sabath*, 990 F. Supp. 1007, 1008 (N.D. Ill. 1998).

[32] *Id*. at 1014.

[33] *Id*. at 1010.

[34] *Id*. at 1010-1011.

[35] *Id*. at 1019.

[36] *United States v. Gross*, 165 F. Supp. 2d 372, 375 (E.D.N.Y. 2001).

[37] *Id*. at 383.

impossibility of defendants locating the missing documents because FNB no longer existed and the law firm that represented FNB had disbanded.[38]

Mr. Mikerin is charged with extortion. It is the Government's theory that Mr. Mikerin threatened Campbell with the loss of business should he not make kickbacks to Mr. Mikerin.[39] Given these allegations, the formation of the business relationship between Mr. Mikerin, Tenex and Campbell, along with Campbell's interactions with Mr. Fisk during the relevant time-frame, are at the heart of this case. And, because of the Government's delay, neither the key witness to this event nor his digital archives are available to Mr. Mikerin.

As acknowledged by the Government, Mr. Fisk played a critical role in the formation of the alleged commercial relationship between Mr. Mikerin, Tenex and Campbell. As mentioned above, the Government avers that it was Mr. Fisk that recommended that Mr. Mikerin utilize Campbell as a consultant for Tenex.[40] It is therefore highly likely that Mr. Fisk had conversations about financial arrangements with Campbell before he had even been introduced to Mr. Mikerin. Mr. Fisk even contemplated going into business directly with Campbell, ultimately proposing that he and Campbell form an entity to directly service Tenex, further evidence of the close relationship between the two.[41] The Government's own evidence makes clear that Mr. Fisk played an ongoing role in the business between Campbell and Tenex prior to his death.[42]

---

[38] *Id*.; *see also United States v. Sabath*, 990 F. Supp. at 1014 (loss of key evidence in arson prosecution held to be severely prejudicial).

[39] Indictment at ¶¶ 22(b), (e) & (h).

[40] Government's Response to Defendant's Motion for Release Pending Trial at 2.

[41] Exhibit J (Document ID KSVM0001500).

[42] *See, e.g.,* Exhibit E (Document ID KSVM0001515); Exhibit F (Document ID KSVM0001338); Exhibit G (Document ID KSVM0001430).

Given Mr. Fisk's close relationship with Campbell, he was undoubtedly aware of Mr. Fisk's illness. The Government's investigation into Mr. Mikerin's activities began in 2009 when Campbell approached the FBI.[43] Campbell actively cooperated with the Government during the length of his contractual arrangements with Tenex, providing real-time information about Mr. Mikerin's activities, limited email communications purportedly evidencing the alleged scheme, and agreeing to surreptitiously video-record Mr. Mikerin. As Campbell was acting as a long-time confidential informant for the Government, the Government was well aware of the critical nature of Mr. Fisk's involvement, and was clearly on notice at least as of March 2011 that Mr. Fisk, a key witness in any subsequent prosecution of Mr. Mikerin or others, was terminally ill. Nevertheless, the Government chose not to indict Mr. Mikerin in time for the effective use of Mr. Fisk's testimony at trial. This, despite the fact that, according to the Indictment, Mr. Mikerin had already extorted Campbell by March 2011. The Government could well, therefore, have charged Mr. Mikerin prior to Mr. Fisk's death and given Mr. Mikerin a fair shot at defending himself.

In addition to the fact that Mr. Mikerin lost the most important defense witness in this case due to the Government's delay, Mr. Mikerin also lost other critical evidence: Mr. Fisk's computer. Much of the evidence produced by the Government consists of emails to or from Mr. Fisk. However, the source of these emails is Mr. Mikerin's own computer and email accounts. Mr. Fisk's email accounts and computers were never themselves subpoenaed, seized or imaged by the Government. Mrs. Fisk appears to have fully cooperated with the FBI when approached in October 2011, yet the agents inexplicably failed to ask for the computer or hard drive. The Government had myriad other opportunities, either through voluntary cooperation or through subpoena, to obtain these critical records between 2011 and

---

[43] Government's Response to Defendant's Motion for Release Pending Trial at 3.

2014. Yet the Government failed to even attempt to obtain the records until October 2014, after the computer had been destroyed.

Given Mr. Fisk's evident proclivity to use email to conduct both professional and personal conversations, his own emails undoubtedly contain more evidence highly relevant to this case. Most importantly, they would contain email conversations with Campbell which would shed light on the nature of the payments alleged by the Government, Campbell's understanding of these payments, and the lack of any extortion by Mr. Mikerin. Separate and apart from email, it is quite likely that Mr. Fisk's computer contained other files relevant to this matter given his ongoing involvement in the business between Campbell and Mr. Mikerin prior to his death.[44]

The delay in seeking to obtain critical evidence is consistent with the Government's inexcusable delay in bringing this case. Despite the length of the investigation, dating back to 2009, the Government chose not to seek an indictment until the end of 2014. And, in the two years between the last overt act and February 2014, the Government apparently collected *one* piece of additional evidence: an audio recording made on August 20, 2012. The audio recording, which occurred seven months after the final alleged overt act, was not made in the midst of an ongoing scheme or conspiracy, but was merely an attempt to gain admissions and to lure Mr. Mikerin into more conduct the Government could then claim was illegal. Following the August 2012 recording, it appears that the Government did not undertake any additional investigative steps for nearly *18 months*. Then, on February 1, 2014, the Government conducted a surreptitious search of Tenam's offices. Thus, rather than continuing to investigate or bring an indictment, the Government inexplicably opted to take a break from August 2012 until February 2014.

---

[44] *See, e.g.,* Exhibit M (Bates Number 1154-56).

Apart from very brief comments made on two video recordings, the August 20, 2012 audio recording is the only audio recording Campbell made of his conversations with Mr. Mikerin – over the course of a 5 year investigation. Apart from this fact simply being inexplicable from an investigatory perspective, it makes the lack of Mr. Fisk at trial all the more prejudicial to Mr. Mikerin. With just one audio recording of their conversations, the jury will hear from just one witness, Campbell, regarding the nature and substance of communications between Mr. Mikerin and Campbell. This are precisely the type of unjustifiable delay that courts have held to violate a defendant's due process rights.[45]

Mr. Mikerin's main defense witness to counter Campbell's claims, Mr. Fisk, is gone, along with critical evidence that was in his possession. Mr. Mikerin is unable to counter certain of Campbell's claims as he was not part of the initial conversations between Mr. Fisk and Campbell about the nature and purpose of the payments. As in the cases cited above, the loss of Mr. Fisk's testimony and critical evidence from Mr. Fisk's computer is blatantly prejudicial to Mr. Mikerin and the Government is unable to establish valid reasons for this delay.

---

[45] *See, e.g., United States v. Sample*, 565 F. Supp. at 1186 (holding that it would be "fundamentally unfair for defendants to stand trial on the charges set forth in the indictment" due to the death of a key witness and unjustified nature of the delay); *United States v. Gross*, 165 F. Supp. 2d at 384-385 (the Government's explanation for its delay in returning an indictment ten years after the transactions at issue and six years after the start of the investigation "do not reveal any legitimate investigatory reason for the delay or serve to otherwise justify the prejudice suffered by defendants"); *United States v. Sabath*, 990 F. Supp. at 1016 (the Government's excuses for a five-year delay between the conclusion of the investigation and the indictment, including late-appearing witnesses and the prosecutor's schedule, "do not come close to justifying the extreme and compound prejudice that defendant suffered from the government's non-investigative delays in this case.").

## IV. CONCLUSION

For the foregoing reasons, Mr. Mikerin respectfully requests that the Court grant this motion to dismiss the indictment on the grounds of pre-indictment delay.


Dated: March 13, 2015                                    Respectfully submitted,

                                                          ORRICK, HERRINGTON & SUTCLIFFE LLP

                                            By:    /s/ Jonathan E. Lopez
                                                      Jonathan E. Lopez
                                                      William B. Jacobson
                                                      1152 15th Street, NW
                                                      Washington, D.C. 20005-1706
                                                      Phone: (202) 339 8456
                                                      Fax: (202) 339 8500
                                                      Email: jonathan.lopez@orrick.com
                                                                   wjacobson@orrick.com

                                                      ATTORNEYS FOR DEFENDANT
                                                      VADIM MIKERIN