IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. TDC 14-00529 |
| | ) | |
| VADIM MIKERIN | ) | |
| | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS FOR INSUFFICIENCY

The United States of America, by and through its undersigned counsel, hereby submits this response to the defendant's motion to dismiss for insufficiency ("Motion to Dismiss") (ECF No. 43). The Government asks the Court to deny the defendant's motion because the defendant is not exempt from prosecution under the charged statute, the Indictment adequately alleges the crime charged, and the charged statute is not ambiguous. In support thereof, the Government states as follows.

### FACTUAL BACKGROUND

The defendant, Vadim Mikerin, was indicted on November 12, 2014 by a federal grand jury sitting in Greenbelt, Maryland. The Indictment charges the defendant with one count of conspiracy to interfere with interstate commerce by extortion, in violation of 18 U.S.C. § 1951 ("the Hobbs Act"), and sets forth the charging language, as follows:

> Between in or about 2009 through at least in or about January 2012, in the District of Maryland and elsewhere, the defendant …did knowingly and willfully combine, conspire, confederate, and agree with other persons, known and unknown to the Grand Jury, to obstruct, delay, and affect commerce and the movement of an article and commodity in commerce by extortion, as that term is defined in Title 18, United States Code, Section 1951(b)( I), by the unlawful taking of money and other things of value from Victim One with Victim One's consent induced by the wrongful use of force, violence, and fear, including the fear of economic loss ….

(Indictment ¶ 16). Following the charging language, the Indictment includes a five paragraph section outlining the Manner and Means of the conspiracy, and a section detailing twenty-one overt acts the defendant is alleged to have committed.

## ARGUMENT

### I. Mikerin Is Not Exempt From Prosecution For Conspiring To Violate The Hobbs Act

The defendant argues that his status as a foreign official immunizes him against prosecution for conspiracy to commit extortion under the Hobbs Act. The defendant's argument primarily relies on: (1) the defendant's interpretation of the legislative history of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-1, et seq.; (2) the defendant's legally untenable extension of the Fifth's Circuit's reasoning in *United States v. Castle*, 925 F.2d 831 (5th Cir. 1991); and (3) the defendant's interpretation of the rules of statutory construction. The defendant's specious attempt to use the legislative history of the FCPA and to extend the Fifth Circuit's reasoning in *Castle* to bestow immunity upon foreign officials for violations of the Hobbs Act is without merit.

The Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, et seq., criminalizes, among other things, paying bribes to foreign officials to obtain or retain business. The government agrees with the defendant's conclusion that the defendant is a foreign official under the FCPA. (*See* Mot. to Dismiss at 6) ("Mr. Mikerin is a foreign official under the FCPA."). While the government disputes the defendant's assertion that a foreign official cannot be charged with any bribery related offense, the government does agree that courts have held that a foreign official cannot be charged with a violation of the FCPA for the act of receiving a bribe.

Here, however, the defendant is not charged with a violation of the FCPA. The defendant is charged with conspiracy to violate the Hobbs Act. The Hobbs Act criminalizes conduct that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion." 18 U.S.C. § 1951(a). Thus, in relevant part, extortion is an essential element of the Hobbs Act; therefore, the Hobbs Act criminalizes entirely different conduct than the FCPA.

The defendant does not, and cannot, point to any legal authority in support of the argument that Congress explicitly refused to criminalize a foreign official's acts of extortion. Instead, the defendant hinges his argument upon the deficient premise that receiving a bribe, in violation of the FCPA, and obtaining payment as a result of extortion, in violation of the Hobbs Act, are the same thing in the eyes of Congress and in the eyes of the law. The defendant argues that extortion and bribery are "two sides of the same coin, mostly co-existing and creating – collectively – corruption." (Mot. to Dismiss at 13). The defendant contends that to charge a foreign official with extortion would be tantamount to charging him with receiving bribes under the FCPA. (Mot. to Dismiss at 9) ("Here, the Government is attempting to…charge a foreign official with conspiring to receive bribes."). This is plainly not the case.

The Hobbs Act clearly and explicitly defines the act of extortion, an essential element of the crime, as requiring more than the mere acceptance of a bribery payment. *See* 18 U.S.C. § 1951(b)(2) ("The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under cover of official right."). In mistakenly leaping to the unfounded conclusion that the FCPA precludes a foreign official from being charged under the

Hobbs Act, the defendant refuses to acknowledge the fact that the Hobbs Act and the FCPA criminalize entirely different conduct.  However, later in the defendant's Motion to Dismiss, the defendant asserts the existence of this distinction when making the argument that the government merely proving the existence of an agreed upon bribery scheme, without proof of more, would require dismissal in this case.  (*See* Mot. to Dismiss at 15-16).  Because this distinction exists, and because the Hobbs Act and the FCPA criminalize different conduct, the defendant's argument fails.

Similarly, the defendant's appeal to *Castle* is inapposite.  In *Castle*, the Fifth Circuit held that the legislative history of the FCPA prohibited charging a foreign official with violating the FCPA, and prohibited charging a foreign official with the crime of conspiring to violate the FCPA.  925 F.2d at 831.  The court based its finding that a foreign official cannot be charged with a substantive violation of the FCPA on "the language of the statute and [its] legislative history." *Id.* at 836.  The court logically extended that same reasoning to hold that a foreign official cannot be charged with conspiring to violate the FCPA, because Congress's intention not to allow foreign officials to be prosecuted under the FCPA would otherwise be vitiated.  *Id.* at 836.

This principle cannot be extended to a violation of the Hobbs Act because extortion is not an inchoate version of the FCPA, it is a substantive crime in and of itself, wholly distinct from the FCPA with entirely different elements.  The two acts are legally and conceptually distinct and it pushes the bounds of reason to suggest that the legislative history of one could have such a profound effect on the implementation of the other.

The *Castle* opinion's ruling on how a conspiracy charge applies to the FCPA does not – and cannot – provide foreign officials with immunity from criminal prosecution for

all other crimes in which the foreign official can claim that payments to the official were somehow involved.  Tellingly, the defendant does not cite a single case to support his theory that exemption from prosecution for one substantive offense may be imported to provide exemption from prosecution for another substantive offense.  To the contrary, many courts have been faced with arguments similar to the defendant's argument and have declined to extend *Castle*, explicitly or implicitly, to other substantive offenses. *See, e.g.*, *United States v. Bodmer*, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004) (explaining that "[w]hether Bodmer violated the FCPA, and the fact that he cannot be criminally sanctioned for that conduct, is irrelevant to proving that he transported money in furtherance of FCPA violations"); *United States v. Duperval,* 777 F.3d 1324 (11th Cir. 2015) (defendant convicted on two counts of money laundering conspiracy and 19 counts of concealment of money laundering where the specified unlawful activities included violation of the FCPA); *United States v. Lazarenko*, 564 F.3d 1026 (9th Cir. 2009) (affirming the conviction of the governor of a region in Ukraine that was charged with money laundering with extortion as a specified unlawful activity.)

      The defendant's argument that the FCPA and Hobbs Act are in conflict, and the rules of statutory construction require the FCPA to prevail over the Hobbs Act fares no better.  As discussed above, the two statutes are not in conflict – one criminalizes foreign bribery and the other criminalizes extortion.  The fact that a foreign official may be exempt from prosecution for accepting bribes under the FCPA does not in any way place the FCPA in conflict with a statute that prohibits extortion.

      Finally, the defendant suggests that the government is using the case at bar as a "test case" and that "[a]llowing the Government to bring extortion charges against Mr.

Mikerin would set a precedent by which the Government could indict scores of foreign officials under the Hobbs Act while bringing FCPA charges against the suppliers of the bribe." (Mot. to Dismiss at 13). Despite this colorful claim, reality is more prosaic. The government can only charge an individual, whether classified as a foreign official under the FCPA or otherwise, with extortion, in violation of the Hobbs Act, if it is able to prove that the individual satisfied the elements of the statute.

Thus, the defendant's status as a foreign official under the FCPA does not immunize him against prosecution for conspiracy to commit extortion under the Hobbs Act, and the defendant's motion should be denied.

**II.     The Indictment Adequately Alleges a Hobbs Act Conspiracy**

The defendant argues that the Indictment should be dismissed because the government has "not adequately alleged either a plan or fear" of economic harm. (Mot. to Dismiss at 14.) The defendant's argument that the Indictment does not adequately allege either a plan or fear rests entirely on the defendant's contention that the government cannot claim that the victim had a reasonable fear of economic harm if he agreed to make the extorted payments "at the outset." (Mot. to Dismiss at 16; *see also* Mot. to Dismiss at 14-15). Because the allegations contained within the Indictment adequately allege that the defendant engaged in a Hobbs Act Conspiracy, and any question regarding the reasonableness of the victim's fear is a factual matter for the jury to decide, the defendant's motion must be denied.

"[A]n indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." *United States v. Vanderhorst*, 2 F.

Supp. 3d 792, 795 (D.S.C. 2014) (quoting *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998)).  "[T]o warrant dismissal of an indictment, a defendant must demonstrate that the allegations contained in the indictment, even if true, fail to state an offense." *Id*. at 796 (quoting *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004) (quotation marks and internal citations omitted)).  The Fourth Circuit has held that "courts lack authority to review the sufficiency of evidence supporting an indictment, even when a mistake was mistakenly made….[A]n indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charges on the merits." *United States v. Wills*, 346 F.3d 476, 488-89 (4th Cir. 2003) (internal quotes and citations omitted).

To prove a Hobbs Act conspiracy, the government must prove that the defendant agreed with at least one other person to commit acts that would satisfy the following three elements: (1) that the defendant coerced the victim to part with property; (2) that the coercion occurred through the wrongful use of actual or threatened force, violence, or fear or under color of official right; and (3) that the coercion occurred in such a way as to affect adversely interstate commerce. *United States v. Strayhorn*, 743 F.3d 917, 925 (4th Cir. 2014) (internal citation omitted).  "Fear of economic harm is, of course, sufficient to sustain a Hobbs Act violation." *United States v. Billups*, 692 F.2d 320, 330 (4th Cir. 1982) (internal citation omitted).

The 10-page Indictment in this case is more than sufficient to satisfy these requirements.  As clearly stated in the indictment, the defendant is charged with knowingly and willfully conspiring "to obstruct, delay, and affect commerce and the movement of an article and commodity in commerce by extortion . . . by the unlawful

taking of money and other things of value from Victim One with Victim One's consent induced by the wrongful use of force, violence, and fear, including the fear of economic loss, involving commercial businesses that were engaged in interstate and foreign commerce." (Indictment ¶ 16). The Indictment further outlines the manner and means by which the defendant conspired with other individuals to extort money from the victim. (Indictment ¶¶ 17-21). The indictment also identifies twenty-one different overt acts the defendant is accused of committing in furtherance of the conspiracy. (Indictment ¶¶ 22a – 22u). The detail in the indictment is sufficient to put the defendant on notice as to the elements of the offense, to allow the defendant to prepare a defense, and for the defendant to avoid being put in double jeopardy should he be charged with future offenses. Thus, the Indictment sufficiently alleges the crime charged.

      The defendant's sole argument to the contrary is the defendant's contention that the government will not be able to prove reasonable fear of economic harm because "whatever [the victim] agreed to with regarding to directing money to other companies was agreed to at the same time that [the victim] agreed to do business with Tenex. (Mot. to Dismiss at 15). Such an argument, however, is an attack on the sufficiency of the evidence the Government would introduce at trial – and thus more appropriately raised in the context of a Rule 29 Motion – and not an attack on the sufficiency of the Indictment. *See, e.g., United States v. Bly*, 510 F.3d 453, 458 (4th Cir. 2007) (affirming denial of motion to dismiss where defendant claimed that the "threat element" of 18 U.S.C.S. § 876 could not be satisfied as a matter of law "is not a legal sufficiency issue; rather, it is an issue of failure of proof on the part of the prosecution").

The issue of whether the victim had a reasonable fear of economic harm is particularly inappropriate for pretrial resolution because it is inherently factual, as demonstrated by the cases cited in the defendant's Motion to Dismiss. *See United States v. Mavroules*, 819 F. Supp. 1109, 1116 (D. Mass. 1993) (explaining that both *United States v. Garcia*, 907 F.2d 380 (2d Cir. 1990) and *United States v. Capo*, 817 F.2d 947 (2d Cir. 1987) do not support the dismissal of an indictment because they involve courts reviewing evidence *after trial*).

For example, in *United States v. Capo*, 817 F.2d 947 (2d Cir. 1987), the issue placed before the Second Circuit was the sufficiency of the evidence the government established at trial. The court based its holding in that case on the fact that "no witnesses testified [*at trial*] to any fear," and that, in fact, "most of the 'victims' testified [*at trial*] that they had no such fear, while the others simply were not asked." *Id.* at 952 (emphasis added). Here, the question is whether the Indictment has sufficiently alleged the crime charged; thus, *Capo* is simply not applicable. For the same reasons, *United States v. Garcia*, 907 F.2d 380 (2d Cir. 1990), is also not relevant to the issue before the Court.

Because any inquiry into whether the victim reasonably feared economic harm is an inherently factual one appropriately addressed on a full record of the evidence at trial, the defendant's motion should be denied. *See, e.g.*, *Bly*, 510 F.3d at 458; *United States v. Shibin*, 2012 WL 8231152, at *3 (E.D. Va. Apr. 16, 2012) ("To the Court's knowledge, irrespective of the standard applied, no court has upheld pre-trial dismissal of an indictment for lack of sufficient evidence where the government has timely objected.").

### III.     The Hobbs Act is Unambiguous

Lastly, the defendant argues that the Hobbs Act is doubly ambiguous because, in the defendant's estimation, it is unclear whether a foreign official may be charged with extortion and it is unclear as to what qualifies as "property," and the rule of lenity must be applied to construe those ambiguities in favor of the defendant.  (Mot. to Dismiss at 18-19).  The defendant's argument fails because there is no ambiguity.

"[T]he rule of lenity only applies if, after considering text, structure, history, and purpose there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended."  *United States v. Castleman*, 134 S. Ct. 1405, 1416 (2014).  *See also Salinas v. United States,* 522 U.S. 52, 66 (1997) (explaining that the rule of lenity "does not apply when a statute is unambiguous or when invoked to engraft an illogical requirement to its text"); *United States v. Ocasio*, 750 F.3d 399, 412 (4th Cir. 2014) ( "[t]he rule of lenity . . . is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seized everything from which aid can be derived, it is still left with an ambiguous statute.").  Here, the Hobbs Act clearly defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

The defendant points to nothing in the text, structure, history, or purpose of the Hobbs Act to raise any doubts as to the meaning of the statute or its definition of extortion.  Instead, the defendant simply asserts that the Hobbs Act was not intended to charge individuals determined to be foreign officials under the FCPA, a class of individuals that was only established when the FCPA was enacted 30 years later, with

extortion.  The defendant's attempt to distinguish individuals defined by the FCPA to be foreign officials for the purposes of any Hobbs Act analysis is wholly unsupported and the defendant's argument is entirely without merit. There is no ambiguity at all, let alone grievous ambiguity, as to whether the Hobbs Act can be applied to individuals determined to be foreign officials under the FCPA.

Similarly, there is no grievous ambiguity about the meaning of "property."  The indictment alleges that the defendant's conspiracy involved the "the unlawful taking of money…" (Indictment ¶ 16).  There can be no doubt that money qualifies as "property."  There is simply no rationale reading of the statute to infer otherwise.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the court deny the defendant's Motion to Dismiss the Indictment for Insufficiency.


Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____/s/_____
Christopher Cestaro
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section

David I. Salem
Assistant United States Attorney
Greenbelt, Maryland

## CERTIFICATE OF SERVICE

This is to certify that on this 24th day of April 2015, a copy of the foregoing Government's Response to the Defendant's Motion to Dismiss for Insufficiency was electronically filed and delivered to all counsel of record via ECF.

_____/s/_____
Christopher Cestaro
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section