**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. TDC 14-0529** |
| | ) | |
| **VADIM MIKERIN** | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR RETURN OF PROPERTY**

The United States of America, by and through its undersigned counsel, hereby submits this opposition to the Defendant's Motion for Return of Property (ECF No. 88). The Government respectfully requests that this Court deny the Defendant's motion, because the property was validly seized as evidence for trial and is subject to forfeiture. In support thereof, the Government states as follows.

## FACTUAL BACKGROUND

The Defendant, Vadim Mikerin, was indicted on or about November 12, 2014, by a federal grand jury sitting in Greenbelt, Maryland on a single count of conspiracy to interfere with interstate commerce by extortion, in violation of 18 U.S.C. § 1951. The Indictment contains 15 paragraphs of background. Among other things, these background paragraphs set forth the following: (1) that Coconspirator One was a United States citizen and associate of the Defendant who worked in the nuclear fuel transportation industry (para. 11); (2) that Corporation A was a "shell" corporation in the United Kingdom, which principally banked with a certain Latvian financial institution and which was principally owned and controlled by a Russian national, Coconspirator Two (para. 12); (3) that Corporation B was a "shell" company in the Republic of Seychelles, which principally banked with a Cypriot financial institution and which was

principally owned and controlled by a Russian national, Coconspirator Three (para. 13); that Corporation C was a "shell" company in Switzerland, which principally banked with a Swiss financial institution (para. 14); and, that Victim One was a Florida-based lobbyist and consultant who had active business dealings with TENEX from 2010 through 2012 (para. 15).

The Indictment states that, on multiple occasions, the Defendant extorted cash payments from Victim One in exchange for the continuation of the TENEX contract. The Indictment also contains a Forfeiture Allegation: The relevant portion of the forfeiture allegation of the Indictment reads as follows:

> As a result of the offense alleged in Count One of this Indictment, the defendant, VADIM E. MIKERIN, shall forfeit to the United States, pursuant to 18 U.S.C. § 98I(a)(l)(C) and 28 U.S.C. § 2461 (c), all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation. The property to be forfeited includes, but is not limited to, $585,000, and all interest and proceeds traceable thereto, in that such sum in aggregate is proceeds obtained, directly or indirectly, as a result of such violation.
>
> If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:
> a. cannot be located upon the exercise of due diligence;
> b. has been transferred or sold to, or deposited with, a third person;
> c. has been placed beyond the jurisdiction of the Court;
> d. has been substantially diminished in value; or,
> e. has been commingled with other property which cannot be divided without difficulty;
> it is the intent of the United States, pursuant to 28 U.S.C. S 2461(c) and 21 U.S.C. S 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property, that is, $585,000.

The Defendant now seeks the return of $18,170 in U.S. Currency seized from Defendant's apartment on October 29, 2014 during the execution of a search warrant.

## ARGUMENT

Although the Government concedes that the evidentiary value of the $18,170 is limited, the $18,170 was rightfully seized as substitute assets relating to the $585,000 forfeiture allegation in the Indictment.

## I. The Defendant's Motion for Return of Property Should Be Denied

### A. The $18,170 Was Originally Seized in Part as Tangible Evidence

The Defendant cites internal Department of Justice policies on seized cash to argue that the cash should be photographed and returned. *See Asset Forfeiture and Policy Manual* at 41-42 (2013) (citing the *The Attorney General's Guidelines on Seized and Forfeited Property* (revised Nov. 2005), section VII(1)), available at http://www.justice.gov/criminal/afmls/pubs/pdf/policy-manual-2013rev.pdf. There is an exception that allows the Government to retain seized cash if it has evidentiary value. *Id* at 41. In this case, the Government maintains that there is certainly some evidentiary value to the currency, as the Defendant extorted over $100,000 in cash, which he received in individualized payments on at least three occasions. However, given the amount of time that has elapsed between the last cash payment and the seizure, the Government believes that its evidentiary value is diminished and instead believes that the property should be retained for forfeiture.

### B. The $18,170 Was Appropriately Seized for Forfeiture

Under these circumstances, the Government has two forfeiture options: forfeiture as criminal proceeds or forfeiture as substitute assets. *See United States v. Bailey*, 926 F. Supp. 2d 739, 764 (W.D.N.C. 2013) ("Further, it has long been established that the proceeds of a crime are always forfeitable…) *see also United States v. Olguin*, 643 F.3d 384, 397 (5th Cir. 2011) (citing

cases from all circuits authorizing money judgments in criminal forfeiture); *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006). The Indictment alleges a money judgment forfeiture authorizing the seizure of a sum of money.

> As a result of the offense alleged in Count One of this Indictment, the defendant, VADIM E. MIKERIN, shall forfeit to the United States, pursuant to 18 U.S.C. § 98I(a)(l)(C) and 28 U.S.C. § 2461 (c), all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation. The property to be forfeited includes, but is not limited to, $585,000, and all interest and proceeds traceable thereto, in that such sum in aggregate is proceeds obtained, directly or indirectly, as a result of such violation.

If identified forfeitable property is unavailable for a reason meeting the requirements of 21 U.S.C. § 853(p)(1)(A)-(E), the United States may seek the forfeiture of "substitute property." Substitute property is "any other property of the defendant," 21 U.S.C. § 853(p)(2), up to the "value of the property that would otherwise be subject to forfeiture." *See United States v. Oregon*, 671 F.3d 484, 487 (4th Cir. 2012). Under § 853(p), substitute assets are subject to forfeiture if directly forfeitable property (1) "cannot be located upon the exercise of due diligence;" (2) "has been transferred or sold to, or deposited with, a third party;" (3) "has been placed beyond the jurisdiction of the court;" (4) "has been substantially diminished in value;" or (5) "has been commingled with other property which cannot be divided without difficulty." 21 U.S.C. § 853(p)(1). Because criminal forfeiture is remedial in nature, § 853 explicitly states that its provisions "shall be liberally construed" in order to effectuate this purpose. 21 U.S.C. § 853(o).

While the Government does not have conclusive evidence that the seized cash is the direct proceeds of the extortion of Victim One, retention of the money in the interim is permissible, under the theory that the money constitutes substitute assets. The seizure of cash is

appropriate under the law because money is fungible under § 853, and a defendant cannot avoid forfeiture by simply showing that he no longer had the money earned from crime. *See United States v. Amend*, 791 F.2d 1120, 1127 & n. 6 (4th Cir. 1986).

Defendant argues at length that, by not specifically including cash in the search warrant, the Government's seizure is improper. Although he correctly identifies that Schedule B was largely a document seizure warrant, the probable cause related to, among others, money laundering and foreign corrupt practices related to bribes. The discovery of a large sum of cash would be consistent with probable cause that such cash either related directly to the crimes discussed in the Affidavit, were proceeds of such activity, or were otherwise discovered in plain view and seizable as contraband. The general rule is that unnamed items may be seized upon probable cause absent flagrant disregard for the terms of the search warrant, and provided that the scope, intensity, and duration of the search authorized by the warrant was not exceeded in acquiring that probable cause. *See United States v. Hill*, 322 F.3d 301 (4th Cir. 2003); *United States v. Ruhe*, 191 F.3d 376 (4th Cir. 1999). Thus, even if the property were not included, the seizure of items "reasonably believed to be the proceeds of unlawful activity" is permissible even if not specifically articulated in the search warrant. *See United States v. Epstein*, 240 F. Supp. 84, 86 (S.D.N.Y. 1965) ("While it is true that cash was not specified in the warrant, the $4,000 which was seized was, according to testimony given upon the hearing, the proceeds of continuing unlawful smuggling activities, and therefore subject to seizure.").

### C. The Indictment Included a Forfeiture Allegation for a Money Judgment of $585,000

While the Indictment does not reference a specific grouping of cash or physical currency, it does state that the Government seeks forfeiture of "all proceeds obtained, directly or indirectly, as a result of such violation" and that "[t]he property to be forfeited includes, but is not limited

to, $585,000 …. *See* ECF No. 11, at 9. Thus, the Government is entitled to hold and forfeit cash in pursuit of a money judgment forfeiture, even if that cash is not the actual proceeds of the offense. *See United States v. Akwei,* 514 Fed.Appx. 291, 294(4th Cir. 2013).

The Defendant argues that the seven months that have elapsed since the seizure of the money offends due process rights and militates in favor of the return of the money. In support of his position, he cites to a Supreme Court decision in a civil forfeiture case, *United States v. $8,850*, 461 U.S. 555, 564–65 (1983), in which the issue was a claimed delay in instituting a civil judicial forfeiture action against certain property of the defendant, after a criminal charge, for which forfeiture of the same property had been sought, was resolved in the defendant's favor. In $8,850, the Supreme Court focused on four factors: "length of delay, the reason for the delay, the [claimant's] assertion of his right, and prejudice to the [claimant].' " *Id.*, 461 U.S. at 564.

The Defendant here argues that the first factor cited – length of the delay – was "substantial, and that the second factor cited – justification for the delay – was lacking and not properly addressed by the Government's Second Bill of Particulars. Motion at 8. Among other things, the Defendant argues that seven months was too long. He claims that there was no probable cause finding related to this specific cash. But the Defendant fails to adequately allege that the judicial forfeiture for the seizure of the money judgment amount was instituted on the date of indictment, not seven months later. The Second Bill of Particulars was not the initiation of a forfeiture proceeding, but merely constituted formal notification of the obvious: that there was a probable cause finding that $585,000 was subject to forfeiture, and that the specific funds properly seized during a search warrant would necessarily constitute part of those funds, whether as proceeds or substitute assets.

Although the Defendant argues that the notice of these specific monies was provided seven months after the Indictment, it is well recognized that money is fungible, and he cannot legitimately claim that he had no notice of the Government's intent to forfeit a much larger sum in the Indictment. In fact, even if notice were somehow read to have been seven months "late," it is substantially less time than the 18 months found to be reasonable in *United States v. $8,850*, 461 U.S. at 565 (Noting "short delays—of perhaps a month or so—need less justification than longer delays.").

Moreover, it is not particularly clear what due process violation the Defendant actually believes occurred. If his claim is that due process was violated because the Government did not initiate forfeiture proceedings in a timely manner, then he must fail, since the money judgment forfeiture – and the substitute assets language -- was contained in the criminal indictment. In fact, the statute of limitations for initiating forfeiture is five years. *See* 19 U.S.C. § 1621.

If the Defendant instead argues that the due process violation was the delay in notifying the Defendant of the Government's intent to forfeit the specific $18,170 as substitute assets, then even if the Indictment could be read as defective in providing such notice, the Second Bill of Particulars certainly provided notice. *Amend*, 791 F.2d at 1125 (quoting *United States v. Raimondo*, 721 F.2d 476, 477 (4th Cir. 1983) ("the indictment need not describe each item subject to forfeiture, but that "[t]his can be done in a bill of particulars."); *see also United States v. Jay*, 887 F.2d 1081 (4th Cir. 1989) (holding that appropriate proof at trial was that corresponding to the bill of particulars.); *United States v. Adams,* No. 4:08CR00033-003, 2009 WL 1766794, at *3 (W.D.Va. June 24, 2009) ("The indictment may use general language tracking the applicable forfeiture statute as long as specific assets are later identified by the Government in a bill of particulars."); *see also United States v. Moffitt, Zwerling & Kemler, P.C.*,

83 F.3d 660, 665 (4th Cir. 1996) ("Moffitt, Zwerling is correct that the Government first specifically identified the $103,800 fee as subject to forfeiture in a bill of particulars filed after the superseding indictment. But this hardly dooms the forfeiture order.").

The second factor – justification for the delay – needs little response. The Government alleged in the Indictment that $585,000 was subject to forfeiture. Its seizure of a lesser sum of money is consistent with the forfeiture allegation, and no delay is apparent. Moreover, even if there were a delay related to the specific amount, and justification for that delay was in fact necessary, the justification would be found in the criminal process of this prosecution: a criminal forfeiture cannot be decided ahead of a conviction. "Criminal forfeiture, although 'not a separate conviction,' nonetheless 'constitutes part of the sentence, in that it is utilized to enhance the punishment of a defendant who has already been convicted of a particular offense.'" *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003). Consequently, criminal forfeiture is an *in personam* penalty against the defendant, *id*. at 668 n. 16, and, if the defendant is convicted, the district court must order the forfeiture of any property derived from or traceable to the offense, *United States v. Blackman*, 746 F.3d 137,143 (4th Cir. 2014).

As for the third factor – claimant's assertion of his rights – it is not clear what informal steps the Defendant claims he took (though he did ask undersigned counsel for the return of the money through counsel a few weeks before the motion was filed), but the motion itself was filed approximately eight months after the property was indicted, and that "can be taken as some indication that [the Defendant] did not desire an early judicial hearing." *$8,850*, 461 U.S. at 569. Finally, the Defendant argues prejudice, but "[t]he primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *Id.; see also United States.v.$57,960.00 in U.S.*

*Currency*, 58 F.Supp.2d 660, 666 (D.S.C.,1999). Prejudice is not, as the Defendant would suggest, simply that he refuses to concede the money is forfeitable. Motion at 9.

Finally, to protect forfeitable property, the Government can request that the court "enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of [forfeitable] property...." 21 U.S.C. § 853(e)(1). This request can be made before or after the filing of an indictment or information. *Id*. If holding the property pending forfeiture is insufficient and the Court requires that the Government take any further action to preserve the property pending forfeiture, the Government would be happy to comply.

**CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the Defendant's Motion should be denied.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _________/s/___________________
David I. Salem
Assistant United States Attorney
Greenbelt, Maryland

Christopher Cestaro
Trial Attorney
U.S. Dept. of Justice, Fraud Section, Crim. Div.

**CERTIFICATE OF SERVICE**

This is to certify that on this 24th day of June 2015, a copy of the foregoing Government's Opposition to Defendant's Motion for Return of Property was electronically filed and delivered via ECF to:

Jonathan E. Lopez
William B. Jacobson
ORRICK, HERRINGTON & SUTCLIFFE LLP
Orrick Building at Columbia Center
1152 15th Street, NW Washington, D.C. 20005-1706

*Counsel for Defendant Vadim Mikerin*

__________/s/________________
David I. Salem
Assistant United States Attorney